**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES COMMODITY FUTURES TRADING COMMISSION, | ‖ | |
| Plaintiff, | ‖ | 13-CV-2041-LRR |
| vs. | ‖ | **ORDER** |
| U.S. BANK, N.A., | ‖ | |
| Defendant. | ‖ | |

—————————

## TABLE OF CONTENTS

I.      INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

II.     PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

III.    SUBJECT MATTER JURISDICTION. . . . . . . . . . . . . . . . . . . . . . **3**

IV.     FACTUAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

    A.   The 1845 Account. . .  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
    B.   Loans to the Wasendorfs and Wasendorf Construction, L.L.C.. . . . . *6*
    C.   Transfers from the 1845 Account . . . . . . . . . . . . . . . . . . . . . . . *8*

V.      ANALYSIS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**

    A.   Motion to Strike Standard. . . . . . . . . . . . . . . . . . . . . . . . . . . **8**
    B.   First Affirmative Defense. . . . . . . . . . . . . . . . . . . . . . . . . . **9**
        1.   Parties' arguments. . . . . . . . . . . . . . . . . . . . . . . . . . . **9**
        2.   Applicable law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . **10**
        3.   Application. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **11**
    C.   Third Affirmative Defense. . . . . . . . . . . . . . . . . . . . . . . . . **12**
        1.   Asserting an unclean hands defense against a government agency. . . . . . . . . . . . . . . . . . . . . **12**
            a.   Parties' arguments. . . . . . . . . . . . . . . . . . . . . **12**
            b.   Applicable law. . . . . . . . . . . . . . . . . . . . . . . **13**
            c.   Application. . . . . . . . . . . . . . . . . . . . . . . . . **17**
        2.   Pleading of affirmative defense. . . . . . . . . . . . . . . . . . **18**
            a.   Parties' arguments. . . . . . . . . . . . . . . . . . . . . **18**
            b.   Applicable law. . . . . . . . . . . . . . . . . . . . . . . **19**

   *c.*  *Application*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **21**
  **3.**  *Unfair prejudice*. . . . . . . . . . . . . . . . . . . . . . . . . . . . **22**
   *a.*  *Parties' arguments*. . . . . . . . . . . . . . . . . . . . . . . **22**
   *b.*  *Application*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **23**
**VI.** **CONCLUSION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **23**

## I. INTRODUCTION

The matter before the court is Plaintiff United States Commodity Futures Trading Commission's ("Commission") "Motion to Strike Defendant's First and Third Affirmative Defenses" ("Motion") (docket no. 20).

## II. PROCEDURAL HISTORY

On June 5, 2013, the Commission filed a Complaint (docket no. 2) alleging that Defendant U.S. Bank, N.A. ("U.S. Bank") improperly used (Count I) and held (Count II) customer funds in violation of: (1) Section 4d(b) of the Commodity Exchange Act ("Act") (codified as amended at 7 U.S.C. § 6d(b)); and (2) 17 C.F.R. § 1.20(a). On August 5, 2013, U.S. Bank filed a "Motion to Dismiss Complaint Seeking Permanent Injunction, Civil Monetary Penalties, and Other Equitable Relief" ("Motion to Dismiss") (docket no. 10). On November 5, 2013, the court denied U.S. Bank's Motion to Dismiss. November 5, 2013 Order (docket no. 18).

On November 19, 2013, U.S. Bank filed an Answer (docket no. 19). On December 3, 2013, the Commission filed the Motion. On December 20, 2013, U.S. Bank filed a "Resistance to Plaintiff's Motion to Strike Affirmative Defenses" ("Resistance") (docket no. 21). On December 27, 2013, the Commission filed a "Reply in Support of Motion to Strike Defendant's First and Third Affirmative Defenses" ("Reply") (docket no. 24).

In the Resistance, U.S. Bank requests the opportunity to present oral argument. The court finds that oral argument is unnecessary. The Motion is fully submitted and ready for decision.

### III. SUBJECT MATTER JURISDICTION

The court has federal question jurisdiction over the Commission's claims against U.S. Bank, which arise under 7 U.S.C. § 6d(b) and 17 C.F.R. § 1.20(a). *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

### IV. FACTUAL BACKGROUND

The Commission is "an independent federal regulatory agency charged by Congress with the administration and enforcement of the Act and the Regulations thereunder." Complaint ¶ 7.

U.S. Bank "is a nationally chartered bank with its principal place of business in Minneapolis, Minnesota." *Id.* ¶ 8. U.S. Bank has several branches in the Northern District of Iowa, including in Cedar Falls, Iowa. U.S. Bank is a wholly owned subsidiary of U.S. Bancorp.

#### A. The 1845 Account

Russell Wasendorf, Sr.[1] incorporated Peregrine Financial Group, Inc. ("Peregrine") in 1990. In January 1992, Peregrine registered as a futures commission merchant ("FCM") with the Commission. Wasendorf, who was the Chief Executive Officer of Peregrine from its inception, registered with the Commission as an associated person ("AP") of Peregrine in 1992.

An FCM is an entity "that . . . is . . . engaged in soliciting or in accepting orders for . . . the purchase or sale of a commodity for future delivery . . . [and] in connection with [such activities], accepts any money, securities, or property (or extends credit in lieu thereof) to margin, guarantee, or secure any trades or contracts that result or may result

---

[1] For ease of reading, the court will refer to Russell Wasendorf, Sr. as "Wasendorf." The court will retain the full names of other members of Wasendorf's family.

therefrom . . . or . . . that is registered with the Commission as a [FCM]." 7 U.S.C. § 1a(28).  As an FCM, Peregrine was required to keep its customers' funds in a customer segregated account ("CSA"), which "[is] designed to ensure that customer funds are protected and available for immediate withdrawal or transfer, even if [Peregrine] experiences financial distress or enters into bankruptcy."  Complaint ¶ 15.

In August 1992, Wasendorf, as Peregrine's AP, placed one of Peregrine's CSAs, the 1845 Account,[2] with a depository bank, Firstar Corporation ("Firstar").  Firstar acted as the depository for the 1845 Account until it merged with U.S. Bancorp in 2001, after which U.S. Bank acted as the depository for the 1845 Account.  When U.S. Bank took control of the 1845 Account, Peregrine notified U.S. Bank that the 1845 Account was a Commodity Exchange Act CSA.  In addition, bank records and related documents referred to the 1845 Account as Customer Segregated Funds or something similar.[3]  While U.S. Bank was the depository of the 1845 Account, Banker A, an Assistant Relationship Manager, was the employee with primary responsibility of managing U.S. Bank's relationship with Wasendorf and Peregrine.

In the course of its business, Peregrine instructed its customers to send checks to fund CSAs to an Iowa or Illinois address.  The checks that customers sent to Peregrine in Iowa were usually deposited in U.S. Bank's Cedar Falls branch and personally processed by Banker A.  Such checks were labeled "Peregrine Financial Group, Inc. Customer Segregated Account."  *Id.* ¶ 27.

---

[2] The account number ended with 1845 and, therefore, the court shall refer to it as the "1845 Account" for ease of reading.

[3] For example, the account was titled: "CEA Customer Segregated Accounts" on the bank's internal computer systems; "Peregrine Financial Group, Inc. Segregated Funds Account" on a August 2000 bank statement; "Firstar/U.S. Bank Customer Seg Account" on a August 2004 financial statement; and "PFG Customer Segregated Funds Account" in bank correspondence in August 1999.  *See* Complaint ¶¶ 37-40.

Among Peregrine employees, Wasendorf made certain he alone had access to and information about the 1845 Account. In fact, Wasendorf told U.S. Bank that he alone should receive communications regarding the 1845 Account. To fulfill Wasendorf's request, U.S. Bank noted in its internal computer system that no account balance confirmations on the 1845 Account were allowed and that any inquiries about the 1845 Account had to be directed to Banker A or the Relationship Manager.

Over the course of two decades, Wasendorf defrauded over 24,000 of Peregrine's customers by misappropriating over $215 million in customer funds from the 1845 Account. He accomplished this by renting a post office box in Cedar Falls, which he set up to appear to be a U.S. Bank address. At the post office, Wasendorf intercepted mail that the National Futures Association ("NFA")[4] and Peregrine's auditor intended to send to U.S. Bank. After receiving the mail, Wasendorf used Photoshop and inkjet printers to alter the bank statements for the 1845 Account and then sent the altered bank statements to the NFA and Peregrine's auditor. In so doing, Wasendorf was able to temporarily conceal his fraud from the NFA, Peregrine's auditor and federal regulators.

Aside from the 1845 Account, U.S. Bank maintained over thirty additional accounts with entities and individuals affiliated with Wasendorf and Peregrine. Among these accounts were accounts for Wasendorf's other companies, including: Wasendorf Air, L.L.C. (company created to hold title to Wasendorf's private airplane), Wasendorf & Associates, Inc. (research and publishing firm), My Verona, L.L.C. (Cedar Falls restaurant) and Traders Press, Inc. (publishing company).

In May 2011, U.S. Bank received a balance confirmation request from the NFA and confirmed that the 1845 Account only held $7.1 million. After returning the form to the NFA, Banker A informed Wasendorf of the confirmation form and provided Wasendorf with a copy of the form. Wasendorf then sent a falsified form to the NFA that stated that

---

[4] The NFA is the self-regulatory agency for the United States' derivatives industry.

the balance of the 1845 Account was $218,650,550. On July 9, 2012, as federal authorities were about to discover his fraud, Wasendorf attempted suicide and left a note admitting his fraudulent behavior.

On September 14, 2012, the government filed an Information charging Wasendorf with mail fraud (Count I), embezzlement of customer funds (Count II), making false statements to the Commission (Count III) and making false statements to the NFA (Count IV). *See United States v. Wasendorf*, No. 12-CR-2021-LRR (N.D. Iowa Sept. 14, 2012), Information (docket no. 18). On September 17, 2012, Wasendorf pled guilty before United States Chief Magistrate Judge Jon S. Scoles to each count in the Information. *See id.*, Minute Entry (docket no. 28). On October 3, 2012, the undersigned accepted Wasendorf's guilty plea. *See id.*, Order (docket no. 35). On January 31, 2013, the court sentenced Wasendorf to fifty years in prison and ordered that he pay over $215 million in restitution. *See id.*, Judgment (docket no. 70).

### B. Loans to the Wasendorfs and Wasendorf Construction, L.L.C.

On September 9, 2008, U.S. Bank issued Wasendorf and his wife, Connie Wasendorf, a $3 million loan ("Wasendorfs' loan"). On that same day, Wasendorf, on Peregrine's behalf, guaranteed the Wasendorfs' loan ("2008 Guaranty"). The 2008 Guaranty stated, inter alia:

> [Peregrine] grants to [U.S. Bank] a security interest in all property in which [Peregrine] has an ownership interest which is now or in the future in possession of [U.S. Bank] to secure payment under [the 2008 Guaranty]. [Peregrine] hereby authorizes [U.S. Bank], without further notice to anyone, to charge any account of [Peregrine] for the amount of any and all Obligations due under [the 2008 Guaranty], and grants [U.S. Bank] a contractual right to set off . . . amounts due hereunder against all depository account balances, cash and other property now or hereafter in the possession of [U.S. Bank] and the right to refuse to allow withdrawals from any account . . . .

6

2008 Guaranty (docket no. 10-3) at 4. Among Peregrine's accounts at U.S. Bank, the 1845 Account had the largest balance. In January 2010, the Wasendorfs and U.S. Bank agreed to extend the maturity date of the Wasendorfs' loan. Wasendorf signed an amended agreement on behalf of Peregrine and, in doing so, Peregrine guaranteed the Wasendorfs' loan. Peregrine served as the guarantor on the Wasendorfs' loan from September 9, 2008 until the loan was paid off in February 2010. During this period, U.S. Bank collected approximately $29,000 in interest on the Wasendorfs' loan.

On September 10, 2008, U.S. Bank issued Wasendorf Construction, L.L.C. ("Construction"), a company formed on July 18, 2007 and owned by Wasendorf and his son, Russell Wasendorf, Jr., a loan for $6.4 million dollars ("Construction loan"). Construction applied for the loan to build an office building in Cedar Falls, Iowa, with Peregrine to be the building's primary tenant. On August 5, 2011, Wasendorf, on behalf of Peregrine, guaranteed the Construction loan ("2011 Guaranty"). The 2011 Guaranty stated, inter alia:

> [Peregrine] grants to [U.S. Bank] a security interest in all property in which [Peregrine] has an ownership interest which is now or in the future in possession of [U.S. Bank] to secure payment under [the 2011 Guaranty]. [Peregrine] hereby authorizes [U.S. Bank], without further notice to anyone, to charge any account of [the Guarantor] for the amount of any and all Obligations due under [the 2011 Guaranty], and grants [U.S. Bank] a contractual right to set off . . . amounts due hereunder against all depository account balances, cash and other property now or hereafter in the possession of [U.S. Bank] and the right to refuse to allow withdrawals from any account . . . .

2011 Guaranty (docket no. 10-4) at 3-4. Peregrine served as the guarantor on the Construction loan from August 2011 to July 2012. During this period, U.S. Bank collected approximately $290,000 in interest on the Construction loan. On December 13,

2012, U.S. Bank filed a claim in Peregrine's bankruptcy proceedings for the $6,662,505.38 outstanding on the Construction loan.

### C. Transfers from the 1845 Account

From June 2008 to June 2012, approximately $118 million was deposited into the 1845 Account and approximately 94% of this money was from Peregrine's customers.[5] In this same period, Wasendorf transferred approximately $35 million from the 1845 Account to himself, his companies and Connie Wasendorf, including approximately $10.5 million to Construction; $13.5 million to Wasendorf & Associates, Inc.; $5 million to My Verona, L.L.C.; $1.1 million to Wasendorf Air, L.L.C.; $2.5 million to Wasendorf personally; and $2.5 million to Connie Wasendorf as part of a divorce settlement.

## V. ANALYSIS

In the Motion, the Commission argues that the court should strike U.S. Bank's first affirmative defense—that the Commission failed to state a claim upon which relief may be granted—and third affirmative defense—that the Commission's claims are barred in whole or in part by the doctrine of unclean hands.

### A. Motion to Strike Standard

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The court has "broad discretion" in determining whether to strike matters from pleadings. *Stanbury Law Firm, P.A. v. IRS*, 221 F.3d 1059, 1063 (8th Cir. 2000); *see also BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) ("Judges enjoy liberal discretion to strike pleadings under Rule 12(f)."). "Striking a party's pleading, however, is an extreme and disfavored measure." *BJC Health Sys.*, 478 F.3d at 917. The court should deny a motion to strike a defense "if the

---

[5] Federal regulations also permitted Peregrine to deposit its own funds into the CSA. Peregrine's funds accounted for the remaining 6% of the funds in the 1845 Account.

defense is sufficient as a matter of law or if it fairly presents a question of law or fact which the court ought to hear." *Lunsford v. United States*, 570 F.2d 221, 229 (8th Cir. 1977) (quoting 2A Moore's Federal Practice ¶ 12.21 at 2437 (2d ed. 1975)). An appellate court reviews a district court's ruling on a motion to strike pursuant to Rule 12(f) for abuse of discretion. *See BJS Health Sys.*, 478 F.3d at 917.

## B. First Affirmative Defense

### 1. Parties' arguments

The Commission contends that the court should strike U.S. Bank's affirmative defense that the Commission failed to state a claim upon which relief may be granted because it is improper and moot. In support of its position that the affirmative defense is improper, the Commission argues that an allegation that a complaint fails to state a claim upon which relief may be granted should be made in a motion to dismiss and not as an affirmative defense in an answer. In support of its position that the affirmative defense is moot, the Commission notes that the court denied U.S. Bank's Motion to Dismiss for failure to state a claim in its November 5, 2013 Order.

In its Resistance, U.S. Bank argues that district courts across the country vary in whether they permit defendants to plead the defense of failure to state a claim as an affirmative defense. U.S. Bank points out that the courts that permit the defense of failure to state a claim in an answer often do so, in part, because Form 30 of the Federal Rules of Civil Procedure indicates that a defendant may present this defense in an answer.

U.S. Bank also notes that some courts acknowledge that "an assertion that the complaint fails to state a claim is technically a denial rather than an 'affirmative' defense," Brief in Support of Resistance (docket no. 21-1) at 3, but these courts still do not strike the assertion because doing so does not serve any purpose when "[t]he Federal Rules of Civil Procedure provide that failure to state a claim may be raised in a responsive pleading (such as an Answer), by a Motion for Judgment on the Pleadings, or as late as trial."

*Id.* (alteration in original) (quoting *U.S. Bank Nat'l Ass'n v. Educ. Loans Inc.*, 2011 WL 5520437, at *7 (D. Minn. Nov. 14, 2011) (internal quotation marks omitted)). U.S. Bank states that "[s]uch courts deny motions to strike even after an initial Rule 12(b)(6) motion has been made and denied." *Id.* at 4.

### 2. *Applicable law*

The Eighth Circuit Court of Appeals has not explicitly addressed whether a defendant may plead as an affirmative defense that a plaintiff failed to state a claim upon which relief may be granted. Federal district courts across the country come to different conclusions on this issue. For example, in *Boldstar Technical, LLC v. Home Depot, Inc.*, 517 F. Supp. 2d 1283 (S.D. Fla. 2007), the court stated:

> Failure to state a claim is a defect in the plaintiff's claim; it is not an additional set of facts that bars recovery notwithstanding the plaintiff's valid prima facie case. Therefore, it is not properly asserted as an affirmative defense.

*Id.* at 1292. On the other hand, some courts hold that "the failure-to-state-a-claim defense is a perfectly appropriate affirmative defense to include in an answer." *SEC v. Toomey*, 866 F. Supp. 719, 723 (S.D.N.Y. 1992).

Other courts treat what they consider a mispleaded affirmative defense as a denial. *See Bluewater Trading LLC v. Willmar USA, Inc.*, 2008 WL 4179861, at *2 (S.D. Fla. Sept. 9, 2008) ("The foregoing statement, although labeled an affirmative defense, alleges a defect in Plaintiff's prima facie case. In other words, the assertion in Defendant's Answer is a denial of Plaintiff's claim rather than an affirmative defense."); *U.S. Bank Nat. Ass'n*, 2011 WL 5520437, at *6 ("In this [c]ourt's view, failure to state a claim is not technically an affirmative defense; however, striking the defense at this juncture would serve no real purpose. The Federal Rules of Civil Procedure provide that failure to state a claim may be raised in a responsive pleading (such as an Answer), by a Motion for Judgment on the Pleadings, or as late as trial." (citing Fed. R. Civ. P. 12(h)(2))). If

considered a denial, the contention that a plaintiff failed to state a claim is permissible in an answer pursuant to Federal Rule of Civil Procedure 12(h)(2). *See* Fed. R. Civ. P. 12(h)(2) ("Failure to state a claim upon which relief can be granted . . . may be raised . . . in any pleading allowed or ordered under Rule 7(a).").

### 3. *Application*

Although the court agrees with the Commission that U.S. Bank improperly pleaded its allegation that the Commission failed to state a claim by pleading it as an affirmative defense,[6] the court is not prepared to strike U.S. Bank's allegation that the Commission failed to state a claim based on this formalistic distinction. However, the court shall exercise its broad discretion by striking U.S. Bank's allegation that the Commission failed to state a claim because the court has already ruled on this issue. Since the court has already addressed U.S. Bank's claim on the merits, U.S. Bank's identical claim in its Answer is an insufficient defense as a matter of law and is now redundant and impertinent.[7] *See* November 5, 2013 Order (docket no. 18) (denying U.S. Bank's motion to dismiss); *see also* Fed. R. Civ. P. 12(f) ("The court may strike from a pleading an

---

[6] The court notes that although Form 30 allows a defendant to allege that a plaintiff failed to state a claim in an answer, it does not categorize failure to state a claim as an affirmative defense. In fact, "Failure to State a Claim" is listed before Form 30's example of an affirmative defense—statute of limitations. *See* Fed. R. Civ. P. Form 30.

[7] To the extent that U.S. Bank argues that Federal Rule of Civil Procedure 12(h)(2) allows a defendant to assert that a plaintiff failed to state a claim in an answer, the court notes that the Rule was designed to make a distinction between defenses that are waived if not made in an initial motion or pleading and those that are preserved if not made in an initial motion or pleading. Of course, a defendant may assert that a plaintiff failed to state a claim even if a defendant did not do so in their initial motion or pleading in any of the ways that Rule 12(h)(2)(A)-(C) provides. However, this Rule is not designed to give a defendant a second bite of the apple after the court already determined that its assertion that a plaintiff failed to state a claim is without merit.

insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."). Accordingly, the court shall strike U.S. Bank's first affirmative defense.

## B. Third Affirmative Defense

The Commission contends that the court should strike U.S. Bank's affirmative defense that the Commission's claims are barred in whole or in part by the doctrine of unclean hands because: (1) this defense cannot be asserted against a government agency in an enforcement action; (2) U.S. Bank's pleading of the defense is insufficient; and (3) permitting the defense to go forward would prejudice the Commission and unnecessarily complicate or delay the enforcement action.

### 1. Asserting an unclean hands defense against a government agency

#### a. Parties' arguments

The Commission acknowledges that the Eighth Circuit Court of Appeals "has not definitively addressed whether the affirmative defense of unclean hands may be asserted against a government agency in an enforcement action." Brief in Support of Motion (docket no. 20-1) at 3. However, the Commission contends that this court should follow the Fifth Circuit Court of Appeals and other district courts, which have granted motions to strike the unclean hands defense as to a government agency and "held that a defendant cannot assert an equitable defense, like unclean hands, against a government agency when that agency is operating pursuant to its congressional mandate in enforcing laws to serve the public interest." Id. (citing United States v. Second Nat. Bank of N. Miami, 502 F.2d 535, 548 (5th Cir. 1974)). The Commission argues that the unclean hands defense is unavailable to U.S. Bank because the Commission "is acting in the public interest to enforce a Congressional mandate by prosecuting U.S. Bank for its violations of the Commodity Exchange Act and Regulations." Id. at 4. Accordingly, the Commission asserts that the court should strike U.S. Bank's unclean hands defense.

U.S. Bank argues that courts have a wide range of discretion in deciding whether to refuse to aid a plaintiff who itself has engaged in willful misconduct, even if that plaintiff is the government. U.S. Bank notes that the Eighth Circuit Court of Appeals has not held as a matter of law that defendants cannot assert the unclean hands defense against the government in an enforcement action. U.S. Bank also asserts that, contrary to the Commission's characterization of other district courts' decisions, district courts across the country have come to different conclusions on whether defendants may assert the unclean hands defense against the government in an enforcement action. Since the Commission has not established that the unclean hands defense is unavailable as a matter of law in the Eighth Circuit, U.S. Bank argues that the court should deny the Commission's Motion.

### b.    Applicable law

"One who seeks equitable relief must approach the court with clean hands." *Earle A. Hanson & Assocs. v. Farmers Coop. Creamery Co.*, 403 F.2d 65, 70 (8th Cir. 1968). If one comes to court "tainted with inequitableness or bad faith relative to the matter in which he [or she] seeks relief, however improper may have been the behavior of the defendant," the court may decline to provide relief. *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945). The unclean litigant's conduct "need not necessarily have been of such a nature as to be punishable as a crime or as to justify legal proceedings of any character." *Id.* at 815. Instead, "[a]ny willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause" for the court to deny relief based on a litigant's unclean hands. *Id.* However, the court has a "wide range" of discretion when considering whether to deny relief to a litigant with unclean hands. *Id.*

"It is well established that the United States is subject to general principles of equity when seeking an equitable remedy." *United States v. Wilson*, 707 F.2d 304, 312 (8th Cir. 1982) (per curiam); *see also Second Nat'l Bank of N. Miami*, 502 F.2d at 548 ("Certainly

when seeking an equitable remedy the United States is no more immune to the general principles of equity than any other litigant."). Although the United States is subject to the general principles of equity, the Supreme Court has stated that equitable principles "will not be applied to frustrate the purpose of [the United States'] laws or to thwart public policy." *Pan-Am. Petroleum & Transp. Co. v. United States*, 273 U.S. 456, 506 (1927). In announcing this principle, the Supreme Court cited numerous cases that forgave a mistake by the government—for example, failing to join a necessary party, *Heckman v. United States*, 224 U.S. 413 (1912),[8] or failing to offer to return the consideration from an allegedly unlawful contract, *Causey v. United States*, 240 U.S. 399 (1916)—because not doing so would frustrate congressional policy. *Pan-Am. Petroleum & Transp. Co.*, 273 U.S. at 506-10. These cases, however, did not specifically address the application of the equitable principle of unclean hands to a government enforcement action. That is,

---

[8] In *Heckman*, the United States brought an action to cancel the conveyances of land that had been allotted to members of the Cherokee Nation because the "conveyances were made in violation of restrictions upon alienation." *Id.* at 446. The party who received the land from the Cherokee Nation argued that since members of the Cherokee Nation had received consideration for their conveyances, they should have been made a party to the suit so that the parties could be made whole if the conveyance was canceled. The Supreme Court stated:

> Where, however, conveyance has been made in violation of the restrictions, it is plain that the return of the consideration cannot be regarded as an essential prerequisite to a decree of cancelation. . . . The restrictions were set forth in public laws, and were matters of general knowledge. Those who dealt with the [Cherokee Nation] contrary to these provisions are not entitled to insist that they should keep the land if the purchase price is not repaid, and thus frustrate the policy of the statute.

*Id.* at 446-47. In essence, the Supreme Court made an exception to general rules of equity because not doing so would thwart the public policy to keep land in the ownership of the Cherokee Nation.

these cases, and the holding in *Pan-American Petroleum & Transportation, Co.* itself, did not consider whether the United States, acting in the public interest, was immune to an affirmative defense that it had unclean hands in relation to the dispute.

The court is aware of only one Circuit Court of Appeals—the Fifth Circuit—that has addressed whether a defendant may assert the affirmative defense of unclean hands against the government in an enforcement action in support of the public interest. In *Second National Bank of North Miami*—a case to which both parties cite—the defendant asserted that the United States was not entitled to relief because the IRS agents involved in the case had unclean hands. *Second Nat'l Bank of N. Miami*, 502 F.2d at 547-48. The Fifth Circuit Court of Appeals acknowledged the principles of *Pan-American Transport Co.* and cited with approval the Tenth Circuit's "good faith" standard,[9] concluding that "'unless the Government did something which in good conscience it should not have done, or failed to do something fair dealing required it to do, it comes into court with clean hands and is entitled to . . . equitable relief.'" *Id.* at 548 (quoting *Deseret Apartments, Inc.*, 250 F.2d at 458). The Fifth Circuit held that the "United States acted with sufficient good faith"

---

[9] In *Deseret Apartments, Inc. v. United States*, 250 F.2d 457 (10th Cir. 1957), the United States, acting on behalf of the Federal Housing Commissioner, brought suit to foreclose the mortgage of Deseret Apartments, Inc. ("Deseret"). *Id.* at 458. The district court granted the United States a deficiency judgment, and Deseret appealed, arguing that the Tenth Circuit should overturn the district court's judgment because the government came into court with unclean hands. Deseret argued that it relied on a certificate of necessity issued by the Secretary of the Army in determining whether to construct the units and that, in fact, there was no need for the units. The Tenth Circuit concluded that "[t]he record is devoid of any facts showing bad faith on the part of the Government officials in executing the certificate or facts which would support a conclusion that the Government failed to do anything it should not have done." *Id.* at 459. Accordingly, the Tenth Circuit concluded that because the Government acted in good faith, it is "absolve[d] [from] all conduct which would sully the Government's hands and prevent it from coming into a court of equity to seek an enforcement of its rights." *Id.*

and that its "conduct [was] insufficiently malignant" and, consequently, granted the United States equitable relief.[10]

Several federal district courts have addressed whether a party may assert the affirmative defense of unclean hands against the government in an enforcement action pursuant to the public interest, including in the Eighth Circuit. In *United States ex rel. Zissler v. Regents of the University of Minnesota*, 992 F. Supp. 1097 (D. Minn. 1998), the court suggested that an unclean hands defense may be available but stated that the government's actions, in that case, did not "'transgress equitable standards.'" *Id.* at 1114 (quoting *Precision Instruments Mfg. Co.*, 324 U.S. at 815). In *EEOC v. Hibbing Taconite Co.*, 266 F.R.D. 260 (D. Minn. 2009), the Equal Employment Opportunity Commission ("EEOC") alleged that Hibbing Taconite Co. ("Hibbing") discriminated against an employee and requested, among other things, that the court require that Hibbing "carry out policies, practices, and programs[] for equal employment opportunities, so as to eradicate the effects of any past or present unlawful employment practices." *Id.* at 263. The court declined to "determine whether a defense of unclean hands should be unavailable, as a matter of law, against the EEOC in its public capacity," because Hibbing did not adequately plead the elements of an unclean hands defense. *Id.* at 270. Accordingly, the court is not aware of any federal court in the Eighth Circuit that has concluded, as a matter of law, that an unclean hands defense is unavailable against the government in an enforcement action pursuant to the public interest.

---

[10] The First Circuit Court of Appeals also equates unclean hands to bad faith and, accordingly, requires litigants to show the government acted with bad faith when asserting the unclean hands defense. *Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 880 (1st Cir. 1995). However, *Texaco Puerto Rico, Inc.*, as with *Deseret Apartments, Inc.*, was not in the context of a government enforcement action pursuant to a congressional mandate to serve the public interest and, therefore, these cases are less persuasive than *Second National Bank of North Miami*.

However, other federal district courts across the country are divided on the issue. Some courts cite *Pan-American Petroleum & Transportation Co.* and *Second National Bank of North Miami* for the proposition that a litigant can never invoke an unclean hands defense against the government in an enforcement action. Other courts deny motions to strike an unclean hands defense and allow the factual record to develop. *Compare, e.g.*, *United States v. Philip Morris Inc.*, 300 F. Supp. 2d 61, 75 (D.D.C. 2004) ("When, as here, the Government acts in the public interest the unclean hands doctrine is unavailable as a matter of law."), *and United States v. Am. Elec. Power Serv. Corp.*, 218 F. Supp. 2d 931, 938 (S.D. Ohio 2002) (granting the United States' motion to strike an unclean hands defense because this defense "may not be used against the United States to prevent it from enforcing its laws to protect the public interest"), *and SEC v. Hayes*, 1991 WL 236846, at *2 (N.D. Tex. July 25, 1991) (striking an unclean hands defense because it was "clearly without merit because it may not be invoked against a governmental agency which is attempting to enforce a congressional mandate in the public interest"), *with SEC v. Nacchio*, 438 F. Supp. 2d 1266, 1287-88 (D. Colo. 2006) (concluding that whether the facts in the case justify an unclean hands defense "cannot be adjudicated on the face of the pleadings, and must therefore await development of a more complete factual record"), *and SEC v. Downe*, 1994 WL 67826, at *1-2 (S.D.N.Y. Mar. 3, 1994) (same).

### c. *Application*

Since there is no controlling precedent and courts across the country differ in how they dispose of motions to strike an unclean hands defense asserted against a government in an enforcement proceeding, the court declines to strike the Commission's unclean hands defense on the grounds that an unclean hands defense is impermissible, as a matter of law, when asserted against the government in an enforcement proceeding pursuant to the public interest. *See BJC Health Sys.*, 478 F.3d at 917 ("Striking a party's pleading, however, is an extreme and disfavored measure."). Rather, U.S. Bank's third affirmative defense

"presents a question of law . . . which the court ought to hear," *Lunsford*, 570 F.2d at 229 (citation omitted), on a more complete factual record, provided it was adequately pleaded.

### 2. *Pleading of affirmative defense*

#### a. *Parties' arguments*

The Commission argues that even if the affirmative defense of unclean hands is available against a government agency in an enforcement action, "U.S. Bank has not satisfied the Eighth Circuit's affirmative defenses pleading requirements." Brief in Support of Motion at 5. Specifically, the Commission contends that U.S. Bank did not give the Commission fair notice of the nature of the defense, which, according to the Commission, is required under Eighth Circuit law.

The Commission also asserts that "[t]he defense of unclean hands invoked against the government requires, at a minimum, that a defendant alleges that the government acted in bad faith or inequitably in its dealings, and that it prejudiced the defendant." *Id.* Moreover, the Commission points out that "courts only permit an unclean hands defense where the government's alleged misconduct is 'egregious' and results in 'extreme prejudice' that rises to the 'constitutional level' and is 'established through a direct nexus between the misconduct and the constitutional injury.'" *Id.* at 6 (quoting *SEC v. Cuban*, 798 F. Supp. 2d 783, 792-95 (N.D. Texas 2011)). According to the Commission, U.S. Bank failed to allege that the Commission engaged in egregious conduct, that there is a nexus between such conduct and U.S. Bank's constitutional injury and that U.S. Bank suffered any prejudice. Accordingly, the Commission argues that the court should strike U.S. Bank's unclean hands defense.

U.S. Bank argues that the Eighth Circuit only requires that the Commission have notice that the affirmative defense is applicable and that affirmative defenses are properly

pleaded by their bare assertion. U.S. Bank asserts that under Eighth Circuit law, there is no requirement that a party provide evidence or facts in support of an affirmative defense.

### b.    Applicable law

Pursuant to Federal Rule of Civil Procedure 8(c), "a party must affirmatively state any . . . affirmative defense." Fed. R. Civ. P. 8(c). "The rules do not require a party to plead every step of legal reasoning that may be raised in support of its affirmative defense; they only require a defendant to state in short and plain terms its defenses to a plaintiff's claims." *Wisland v. Admiral Beverage Corp.*, 119 F.3d 733, 737 (8th Cir. 1997). When stating a claim for relief, however, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), held that a plaintiff adequately states a claim for relief pursuant to Federal Rule of Civil Procedure 8(a)(2) "'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hamilton v. Palm*, 621 F.3d 816, 817 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). The Eighth Circuit, however, has not addressed whether the pleading standards of *Twombly* and *Iqbal* apply to the pleading of affirmative defenses. In other words, the Eighth Circuit has not determined whether defendants, when pleading affirmative defenses, must also plead factual content that, if true, would allow the court to draw the reasonable inference that the affirmative defense is applicable. *See Hibbing Taconite Co.*, 266 F.R.D. at 267 ("The Eighth Circuit has not specifically ruled on whether affirmative defenses must meet the same pleading requirements as claims, and a survey of decisions in the [d]istrict [c]ourts of this Circuit reveals somewhat murky waters in the [c]ourts' varying approaches."); *Strauss v. Centennial Precious Metals, Inc.*, 291 F.R.D 338, 342-43 (D. Neb. 2013) ("The parties admit that the Eighth Circuit . . . has not

addressed whether the *Iqbal/Twombly* standard applies to the pleading of affirmative defenses, and the *Iqbal* and *Twombly* cases themselves are silent on the issue.").

Federal district courts across the country have not come to a consensus about whether affirmative defenses are subject to heightened pleading standards of *Twombly* and *Iqbal*. No Circuit Court of Appeals has addressed this issue, and the district courts are divided. *See Godson v. Eltman, Eltman & Cooper, P.C.*, 285 F.R.D. 255, 257 (W.D.N.Y. 2012) ("Indeed, as the parties acknowledge, not one court of appeals has considered this issue." (footnotes omitted)); *see also* Stephen Mayer, Note, *An Implausible Standard for Affirmative Defenses*, 112 Mich. L. Rev. 275, 276 (2013) ("More than one hundred federal cases have contemplated whether the plausibility standard outlined in *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal* applies to affirmative defenses, yet the districts remain divided, and no court of appeals has yet addressed the issue."). At first, the majority of district courts extended the pleading standard articulated in *Twombly* and *Iqbal* to affirmative defenses, but this is now the minority position. *See Hansen v. Rhode Island's Only 24 Hour Truck & Auto Plaza, Inc.*, 287 F.R.D. 119, 122 (D. Mass. 2012).[11] Within the Eighth Circuit, the district courts have arrived at different positions. *Compare Strauss*, 291 F.R.D. at 343 ("In light of the lack of binding authority, the Eighth Circuit Court of Appeals' holdings[12] that a minimal pleading standard applies to affirmative

---

[11] For an extensive discussion of the history of this development and the reasons that courts have taken different positions, see Mayer, *supra*.

[12] The U.S. District Court for the District of Nebraska cites four cases—*Barnwell & Hays, Inc. v. Sloan*, 564 F.2d 254 (8th Cir. 1977); *Zotos v. Lindbergh School Dist.*, 121 F.3d 356 (8th Cir. 1997); *Wisland*, 119 F.3d at 733; and *Holway v. Negro Leagues Baseball Museum*, 263 Fed. App'x. 538 (8th Cir. 2008)—for the proposition that the Eighth Circuit has minimal pleading standards for affirmative defenses. *See Strauss*, 121 F.3d at 341-42. The court notes, however, that the Eighth Circuit decided three of these cases before *Twombly* and *Iqbal* and the only case decided post-*Twombly* (but before *Iqbal*) (continued...)

defenses . . . and the fact that these rulings do not appear to have been changed by *Iqbal* and *Twombly*, I find . . . the *Iqbal*/*Twombly* pleading standard to be inapplicable to those affirmative defenses." (footnote added)), *with Hibbing Taconite Co.*, 266 F.R.D. at 268 ("We . . . require the defendant to plead an adequate factual basis for affirmative defenses, where the basis is not apparent by the defense's bare assertion. As a consequence, we evaluate [the] Answer for futility with the *Twombly* pleading standards in mind . . . .").

### c.   *Application*

Since neither the Supreme Court nor the Eighth Circuit Court of Appeals has provided guidance on whether the pleading standards articulated in *Iqbal*/*Twombly* extend to affirmative defenses and the Eighth Circuit has liberally construed arguably deficient affirmative defenses, the court shall not strike U.S. Bank's affirmative defense that the Commission had unclean hands and is not entitled to relief. The court is also persuaded by the text of Federal Rule of Civil Procedure 8. Rule 8(a) states that a "claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). However, Rule 8(c) only requires that a defendant "affirmatively state any . . . affirmative defense." Fed. R. Civ. P. 8(c). Nowhere in Rule 8(c) is there a requirement for the party pleading an affirmative defense to "show[] that the pleader is entitled to relief," or, in the case of a defendant, that the affirmative defense, if the facts articulated were true, absolves the pleader of liability. Moreover, it is unfair to require a defendant to plead facts supporting an affirmative

---

[12](…continued)
considered whether a defendant adequately pleaded a statute of limitations affirmative defense despite failing to cite the relevant statute. The court does not believe that these cases are controlling precedent with respect to the issue at hand because three of the cases were decided pre-*Twombly* and *Iqbal* and the other considered a statute of limitations defense, which does not present the same notice issues as an affirmative defense such as unclean hands. However, the court does note that, at times, the Eighth Circuit has liberally construed affirmative defenses, which is persuasive for the issue at hand.

defense with the same particularity required in a complaint when the party filing the complaint has the entire statute of limitations period to find facts supporting its claim, while the party asserting an affirmative defense has twenty-one days. *See* Fed. R. Civ. P. 12(a)(1)(A).[13] Finally, the court concludes that the procedural posture in this case and the nature of U.S. Bank's affirmative defense do not warrant striking the affirmative defense of unclean hands. In its Motion to Dismiss, U.S. Bank provided a basis for its unclean hands defense that put the Commission on notice that U.S. bank might assert this defense, and the nature of the defense is not so foreign or unusual that the Commission would not have fair notice of what it is up against. Accordingly, the court shall not strike U.S. Bank's third affirmative defense.

### 3. *Unfair prejudice*

#### a. *Parties' arguments*

The Commission contends that if the court were to permit U.S. Bank's unclean hands defense to move forward, it would unfairly prejudice the Commission in terms of the time and resources required to litigate irrelevant issues. The Commission contends that "it is highly improbable that any 'unclean hands' allegations will relate to the main issue in this enforcement action, which is whether U.S. Bank violated the Commodity Exchange Act and Regulations." Brief in Support of Motion at 7.

U.S. Bank argues that it is entitled to discovery on the unclean hands defense and that the burden of additional discovery is not an appropriate reason to strike an affirmative defense.

---

[13] The court is aware that a defendant may have more time to find facts that support its defense if it has waived service or filed a motion, as is the case here, but nonetheless, the time is far less than period provided by the applicable statute of limitations.

### b. *Application*

At this stage of litigation, and especially in a case of first impression, the court is reluctant to utilize its discretion to strike an affirmative defense without clear guidance from the Eighth Circuit. The court concludes that U.S. Bank's unclean hands defense is, at this stage of litigation, a potentially valid defense and, therefore, U.S. Bank is entitled to discovery. Although the defense may be "highly improbable," as the Commission contends, this does not prevent U.S. Bank from pursuing the defense if it believes such pursuit is warranted.

## VI. CONCLUSION

In light of the foregoing, **IT IS ORDERED THAT** Plaintiff United States Commodity Futures Trading Commission's Motion (docket no. 20) is **GRANTED IN PART** and **DENIED IN PART**.

(1)    The court **GRANTS** the Motion to the extent it requests the court to strike U.S. Bank's first affirmative defense in its Answer.

(2)    The court **DENIES** the Motion to the extent it requests the court to strike U.S. Bank's third affirmative defense in its Answer.

**DATED** this 27th day of January, 2014.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA