IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

UNITED STATES COMMODITY
FUTURES TRADING COMMISSION,

    Plaintiff,

vs.

U.S. BANK, N.A.,

    Defendant.

No. C13-2041

RULING ON MOTION TO COMPEL

## TABLE OF CONTENTS

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . 2

III. RELEVANT FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV. DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    A.   Is the Motion to Compel Timely? . . . . . . . . . . . . . . . . 6
    B.   Is the Information Relevant? . . . . . . . . . . . . . . . . . . 7
        1.   References to U.S. Bank . . . . . . . . . . . . . . . . 7
        2.   CFTC's Knowledge of Wasendorf's Wrongdoing . . . . . . . . . 8
        3.   Affirmative Defense of "Unclean Hands" . . . . . . . . . . . . 9

V.  ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    A.   Request for Production No. 7 . . . . . . . . . . . . . . . . . . 10
    B.   Request for Production No. 8 . . . . . . . . . . . . . . . . . . 11
    C.   Request for Production No. 10 . . . . . . . . . . . . . . . . . 12
    D.   Request for Production Nos. 22 and 23 . . . . . . . . . . . . . 12
    E.   Request for Production No. 26 . . . . . . . . . . . . . . . . . 13
    F.   Request for Production No. 27 . . . . . . . . . . . . . . . . . 13
    G.   Interrogatory Nos. 6 and 7 . . . . . . . . . . . . . . . . . . . 13
    H.   Interrogatory No. 8 . . . . . . . . . . . . . . . . . . . . . . . 14

VI. ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## I. INTRODUCTION

On the 29th day of May 2014, this matter came on for hearing on the Motion to Compel (docket number 36) filed by Defendant U.S. Bank National Association ("U.S. Bank" or "the Bank") on April 16, 2014. The Bank was represented by its attorneys, Kristina Carlson and Megan Flynn. Plaintiff United States Commodity Futures Trading Commission ("the CFTC" or "the Commission") was represented by its attorneys, Robert Howell and Susan Gradman.

## II. PROCEDURAL HISTORY

On June 5, 2013, the CFTC filed a Complaint against U.S. Bank, seeking a permanent injunction, civil monetary penalties, restitution, and disgorgement. The Commission alleges that the Bank's actions regarding Peregrine Financial Group, Inc. ("PFG") and its CEO, Russell Wasendorf, Sr., violated the Commodity Exchange Act.

On August 5, 2013, U.S. Bank filed a motion to dismiss, claiming there was no statutory violation and asking that the complaint be summarily dismissed. The Court denied the Bank's motion to dismiss in an order filed on November 5, 2013.

On November 19, 2013, U.S. Bank filed its answer. The Bank denied the material allegations and asserted certain affirmative defenses, including the "doctrine of unclean hands." The CFTC responded with a motion to strike, filed on December 3, 2013, asking that the Bank's "unclean hands" defense be dismissed. On January 27, 2014, the Court entered an order denying the Commission's motion to strike the unclean hands defense.

Meanwhile, on September 26, 2013, the Court adopted a proposed Scheduling Order and Discovery plan submitted by the parties. Among other things, the parties agreed to a June 3, 2014 deadline for completion of discovery, with dispositive motions filed not later than July 3, 2014. In reliance on those deadlines, the case has been scheduled for trial before Chief Judge Linda R. Reade beginning on January 5, 2015.

Acting on the Commission's motion, the Court entered an Order on December 23, 2013, extending the deadlines for disclosure of expert witnesses. The Order stated that the deadlines for completion of discovery and filing dispositive motions remained unchanged, and the parties were reminded that *"January 5, 2015 remains a firm trial date."* See Order Extending Deadline for Disclosure of Expert Witnesses (docket number 23) (emphasis in original).

On January 23, 2014, the Commission filed an unresisted motion asking that the expert witness deadlines be extended again, and asking for an extension of the discovery deadline and dispositive motions deadline. The Commission conceded that "this extension will affect the current discovery completion date (June 3, 2014) and the trial date (January 5, 2015)." The motion noted that "[d]ue to the lack of a protective order, neither party exchanged documents in this matter prior to January 22, 2014." The motion was granted in part and denied in part in an Order filed the following day. The Court extended the pretrial deadlines, with all discovery to be completed not later than August 3, 2014. The parties were further advised: *"No further extensions will be granted. The parties are reminded that January 5, 2015 remains a firm trial date."* See Order Resetting Pretrial Deadlines (docket number 30) (emphasis in original).

On April 16, 2014, U.S. Bank filed the instant motion to compel. The CFTC filed its resistance on April 30. The Bank filed a reply on May 12.

### III. RELEVANT FACTS

On October 22, 2013, the CFTC served U.S. Bank with its initial disclosures pursuant to FED. R. CIV. P. 26(a)(1). The Commission identified 24 persons likely to have discoverable information, including two CFTC investigators and a former CFTC employee. The Commission's initial disclosures also identified 11 categories of documents in the Commission's possession, including transcripts of CFTC investigative testimony, and documents received from third parties. Regarding a computation of damages, the

CFTC referred to civil monetary penalties, disgorgement, and restitution, together with costs and fees.

On December 6, 2013, U.S. Bank served the CFTC with its first set of requests for production of documents and first set of interrogatories. The Commission responded to the requests on January 15, 2014. Believing the responses were inadequate, one of the Bank's attorneys (Kristina Carlson) wrote to one of the Commission's attorneys (Susan Gradman) on February 13, 2014, describing the alleged deficiencies. Ms. Gradman responded in a letter dated February 26, 2014. When further communications were unable to resolve the issues, the Bank filed the instant motion to compel.

The CFTC has produced approximately 2.8 million documents. It is the Court's understanding that the production represents those documents described in the Commission's initial disclosures. That is, the Commission conducted an investigation after Wasendorf's wrongdoing came to light in July 2012, and has produced "transcripts of CFTC investigative testimony." CFTC has also apparently produced documents which it received from Peregrine Financial Group, Inc., the National Futures Association, the Department of Justice and/or the Federal Bureau of Investigation, Veraja-Snelling and Company, Russell Wasendorf, Jr., Douglas Boe, Lisa Rolinger, Hope Timmerman, U.S. Cellular, and U.S. Bank.

The discovery dispute, however, involves the CFTC's *own* records and documents. Apparently, the parties were able to identify 22 document custodians within the CFTC whose records were searched for relevant documents. U.S. Bank provided the Commission with a list of search terms, which resulted in the capture of about 115,000 documents.[1] It is the Court's understanding that those documents have now been placed

---

[1] In its resistance to the instant motion, the CFTC says it "is currently reviewing over 110,000 additional documents for relevance and privilege." CFTC's Brief (docket (continued...)

4

in a database for further review. At the time of hearing, CFTC's counsel represented to the Court that of the 115,000 documents in the database, there are "about 15,000 left for us to review, and then we need to do the privilege log." According to Mr. Howell, the other 100,000 documents have been reviewed, with about 3,000 documents produced. When asked why the other 97,000 had not been produced, Mr. Howell advised the Court they were either nonresponsive or privileged. Mr. Howell estimated it would take another two months to review the remaining 15,000 documents and prepare a privilege log.

## IV. DISCUSSION

In its motion to compel, the Bank identifies seven requests for production of documents and three interrogatories where it believes the Commission has failed to fully comply with its discovery obligation. Broadly speaking, much of the dispute revolves around the question of whether the Bank is entitled to discover "what the CFTC knew regarding Wasendorf's wrongdoing, and when they knew it."

In its complaint, the CFTC asserts that U.S. Bank violated the Commodity Exchange Act when it permitted PFG and Wasendorf to spend customer funds, which had been deposited in a "customer segregated account," for personal use. While the Bank denies any knowledge of Wasendorf's wrongdoing, the Commission argues that there were numerous "red flags" which should have alerted the Bank to the problem. In seeking additional discovery, the Bank wants to determine what "red flags," if any, were known to the CFTC. That is, the Bank argues that if similar information of wrongdoing was available to the CFTC and, as a regulatory commission, it did not connect-the-dots, then it is unreasonable to require the Bank to connect-the-dots based on similar information.

---

[1](...continued)
number 44) at 11. At the hearing, Mr. Howell stated the documents totaled "not quite 120,000."

In response, the Commission argues that the information available to it was different than the information available to the Bank and, in any event, the CFTC's regulatory role differed significantly from the Bank's obligation to monitor PFG's activities. The Court finds the first argument is circular. That is, the Commission argues that the information available to it was not the same information which was available to the Bank and, therefore, is not discoverable. That assertion can only be verified, however, by comparing the information available to the Commission. Regarding the second argument, the CFTC asserts U.S. Bank violated the Commodity Exchange Act when it failed to discover Wasendorf's wrongdoing, and intervene appropriately. *If* the Commission had similar information which raised "red flags" that Wasendorf was violating the Commodity Exchange Act and it did not act on that information, then the information is relevant to rebut the claim that a reasonable person should have concluded from similar information that a violation had occurred.

The parties also disagree on how far back the discovery should be permitted. "The CFTC has agreed to produce non-privileged documents responsive to U.S. Bank's Document Requests dating back to June 5, 2008." CFTC's Brief (docket number 44) at 10. Because of the statute of limitations, the complaint seeks recovery for damages starting in 2008. U.S. Bank argues, however, that because the complaint includes allegations regarding the relationship between the bank and PFG prior to 2008, it should be entitled to discovery of relevant documents held by the Commission prior to that date.

### A. Is the Motion to Compel Timely?

In its resistance to the motion to compel, the CFTC first argues that the motion is untimely, citing Local Rule 37. When the parties were unable to reach an agreement initially regarding production of documents, the Bank established a March 19, 2014 deadline to avoid "the need for motion practice." Citing Local Rule 37(c), the

6

Commission argues that the deadline for filing a motion to compel was 14 days later, or April 2. The motion to compel was filed on April 16.

Local Rule 37(c) states:

> Motions to compel must be filed as soon as practicable. In any event, except for good cause shown, motions to compel must be filed within 14 days after the discovery deadline.

The "discovery deadline" in this case was established by the Court in the Scheduling Order. It was later extended to August 3, 2014. Accordingly, a motion to compel in this case must be filed "as soon as practicable," but in any event not later than August 17. The Commission's argument simply misapprehends the Rule.

### B. Is the Information Relevant?

The Bank argues that the information being sought is relevant for three reasons: First, any references to U.S. Bank, including documents predating June 2008, may include allegations of wrongdoing which the Commission may then seek to introduce at the time of trial. Second, any knowledge by the CFTC of Wasendorf's wrongdoing is properly compared with U.S. Bank's alleged knowledge of Wasendorf's wrongdoing, to rebut the Commission's argument that "red flags" should have alerted the Bank to the problem and caused it to intervene. Third, the Bank argues that the information being sought is relevant to its affirmative defense of CFTC's "unclean hands."

### 1. References to U.S. Bank

As previously noted, the Commission's claim for damages is limited by the statute of limitations to a period beginning in 2008. The CFTC asserts, however, that Wasendorf's wrongdoing preceded that time period. Undoubtedly, the Commission will seek to offer evidence regarding the relationship between PFG, Wasendorf, and the Bank which predates 2008. Clearly, the Bank is entitled to review any documents which reference its relationship with PFG or Wasendorf, without restriction as to time.

## 2. CFTC's Knowledge of Wasendorf's Wrongdoing

The Commission has agreed to provide copies of all responsive, non-privileged documents in its possession starting in June 2008. The Commission argues, however, that documents, if any, relating to its alleged knowledge of Wasendorf's wrongdoing are not relevant to any claim or defense in this lawsuit and, therefore, need not be produced.

The FEDERAL RULES OF CIVIL PROCEDURE authorize broad discovery. *See* FED. R. CIV. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . ."). "Discovery Rules are to be broadly and liberally construed in order to fulfill discovery's purposes of providing both parties with 'information essential to the proper litigation of all relevant facts, to eliminate surprise, and to promote settlement.'" *Rollscreen Co. v. Pella Products*, 145 F.R.D. 92, 94 (S.D. Iowa 1992). While the standard to be applied is one of liberality, however, "relevancy under Rule 26 is not without bounds." *Bredemus v. International Paper Co.*, 252 F.R.D. 529, 533 (D. Minn. 2008). *See also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) ("At the same time, 'discovery, like all matters of procedure, has ultimate and necessary boundaries.'") (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).

Generally, the party resisting production of the requested information bears the burden of establishing lack of relevancy. *St. Paul Reinsurance Co., Ltd. v. Commercial Financial Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa 2000).

> The party must demonstrate to the court "that the requested documents either do not come within the broad scope of relevance defined pursuant to FED. R. CIV. P. 26(b)(1) or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.

*Id.* (quoting *Burke v. New York City Police Department*, 115 F.R.D. 220, 224 (S.D.N.Y. 1987)). "However, when a request for discovery is overly broad on its face or when

relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request." *Cunningham v. Standard Fire Ins. Co.*, 2008 WL 2902621 (D. Colo.) at *1.

In its complaint, the CFTC alleges U.S. Bank violated the Commodity Exchange Act by knowingly permitting Wasendorf to use customer funds to pay personal expenses. The Commission claims the Bank should have known of Wasendorf's wrongdoing by a number of "red flags" available to it. Presumably, the jury will be called upon to determine what the Bank knew, or should have known, and what reasonable conclusions the Bank should have drawn from information available to it. The Court concludes that if similar information was available to the Commission, and the Commission did not draw the inferences which it now believes the Bank should have drawn, then the evidence may be relevant to rebut at least one of the Commission's claims. This is true whether the information came to the Commission before or after 2008. Accordingly, the Court concludes that documents relating to "what the Commission knew and when it knew it" is "relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1).

### 3. Affirmative Defense of "Unclean Hands"

In its answer, U.S. Bank asserts an affirmative defense that "Plaintiff's claims are barred in whole or in part by the doctrine of unclean hands." The CFTC moved to strike the affirmative defense, asserting that it "is not appropriate against the government in an enforcement action operating pursuant to its congressional mandate in enforcing laws to serve the public interest," and that it did not satisfy the Eighth Circuit's affirmative defenses pleading requirements. Chief Judge Reade rejected the Commission's arguments in an Order filed on January 27, 2014. Judge Reade concluded that while the defense may be "highly improbable," as the Commission contends, the "unclean hands defense is, at this stage of litigation, a potentially valid defense and, therefore, U.S. Bank is entitled to discovery." *See* Order (docket number 31) at 23. Accordingly, the Court concludes that

9

documents relating to the Commission's knowledge, including knowledge which predated 2008, is discoverable to the extent it may support the Bank's affirmative defense.

### V. ANALYSIS

#### A. Request for Production No. 7

In the first disputed request for production, the Bank seeks documents relating to (a) the Commission's examination of PFG in 1994, (b) a Commission audit of PFG in August 1999, (c) a review of PFG's repurchase transactions in 2009, (d) a review of PFG's anti-money laundering program during 2010, and (e) the CFTC's investigation following Wasendorf's attempted suicide in July 2012.

In response to the Bank's requests for production of documents, the CFTC first listed in boilerplate-fashion eight "General Objections." In responding to the individual requests for production, the Commission references its General Objections and, for good measure, repeats the objections again in boilerplate fashion. The CFTC's response to Request No. 7 is illustrative:

> In addition to the foregoing General Objections, the Commission objects to this request to the extent that it seeks documents that are publicly available or are already in possession of the Defendant.
>
> The Commission objects to this request to the extent that it seeks documents that are privileged by virtue of the governmental deliberative process privilege, attorney-client privilege and protected under the attorney work-product doctrine.
>
> The Commission objects to this request because it is vague, overly broad and unduly burdensome. The Commission further objects to this request to the extent that it seeks documents that are not relevant to the allegations contained in the Complaint or reasonably calculated to lead to the discovery of admissible evidence.

> Notwithstanding said objections, all documents responsive to subpart (e) that are not privileged will be produced within a reasonable period of time. Documents relevant to subparts (a) through (d) are outside the scope of this litigation and not relevant to the allegations in the Complaint or reasonably calculated to lead to the discovery of admissible evidence.

CFTC's Responses to First Set of Requests for Production of Documents (Defendant's App. 19-20).

At the time of hearing, counsel for the Commission conceded that she was not able to identify which requested documents, if any, were "publicly available." In addition, with the exception of the investigation transcripts (which have apparently been produced), there is no indication that the other requested documents "are already in the possession of the Defendant." The Commission has yet to provide a privilege log, identifying the specific documents which are otherwise relevant and subject to discovery, but in which a privilege is claimed. The Court does not believe the items identified in Request No. 7 are vague, and cannot conclude on this record that their production would be unduly burdensome. For the reasons set forth above, the Court also concludes that the requested documents are relevant to the Bank's defenses. Accordingly, the Court concludes the Commission must produce the documents identified in Request for Production No. 7.

### B. Request for Production No. 8

In its Request for Production No. 8, the Bank seeks documents relating to "any settlement with PFG, including without limitation any settlement in or around September 2000." In response, the Commission sets forth boilerplate objections and argues that the documents "are outside the scope of this litigation, not relevant to the allegations contained in the Complaint or reasonably calculated to lead to the discovery of admissible evidence." I disagree.

For discovery purposes, relevance is broadly construed. CFTC now seeks judgment against U.S. Bank for "tens of millions of dollars" because the Bank allegedly failed to

adequately monitor Wasendorf's activities and prevent his improper use of customer funds. If the Commission had similar knowledge of Wasendorf's wrongdoing or failure to comply with the Commission's regulations, then it may be relevant to the Bank's defenses. Accordingly, the Commission must produce those documents identified in Request for Production No. 8.

### C. Request for Production No. 10

Request for Production No. 10 references a CFTC press release dated January 25, 2012. Apparently, the Commission conducted a "limited review" of 70 futures commission merchants, including PFG, "to assess compliance with requirements to segregate customer funds pursuant to Section 4d of the Commodity Exchange Act." U.S. Bank asks that all documents relating to those 70 reviews be produced. The Commission responded with its boilerplate objections.

At the time of hearing, neither party was able to identify the nature of the "limited reviews" or what documents may have been generated in that regard. The Court concludes that the Commission must produce those documents relating to the "limited review" of PFG. The Court will not order production of the documents relating to the reviews of the other futures commission merchants at this time. If the Bank determines, upon receipt of the documents pertaining to PFG, that documents relating to other futures commission merchants will likely yield relevant information, then the Bank may bring this matter back to the Court's attention.

### D. Request for Production Nos. 22 and 23

In Request for Production Nos. 22 and 23, U.S. Bank seeks "all communications" and "all documents" between the Commission and any employee of the legislative branch relating to PFG, Russell Wasendorf, Sr., or U.S. Bank. Predictably, the Commission responded with boilerplate objections.

At the time of hearing, Mr. Howell assured the Court that if the database obtained from the 22 custodians contains email or correspondence with the legislature, the Commission "ha[s] produced it or will be producing it." The Court finds that the documents identified in Request Nos. 22 and 23 must be produced.

### E. Request for Production No. 26

In document Request No. 26, the Bank seeks "[a]ll policies and procedures addressing regulatory oversight of handling of customer funds." In addition to its standard boilerplate objections, the Commission responded: "Notwithstanding said objections, the Commission directs Defendant to the Commodity Exchange Act and Regulations."

Here, the Court agrees with the Commission that the reference to "policies and procedures" is vague. At the time of hearing, counsel for the Commission advised the Court that all formal policies and procedures are included in the Act, or are otherwise published in the Code of Federal Regulations. There are apparently no other policies and procedures "addressing regulatory oversight of handling of customer funds." The Court concludes that no further response is required for Request No. 26.

### F. Request for Production No. 27

In Request for Production No. 27, the Bank seeks documents relating to any "self-critique, or other analysis of regulatory oversight of handling of customer funds." To the extent the CFTC conducted an investigation following July 2012 of its conduct regarding oversight of PFG, the Court concludes that any report, summary, or written analysis must be produced, to the extent that it is not otherwise privileged. If such documents exist but the Commission claims they are privileged, then they must be identified on an appropriate privilege log.

### G. Interrogatory Nos. 6 and 7

In Interrogatory No. 6, U.S. Bank asks the CFTC to identify each employee responsible for "oversight of PFG or any depository used by PFG." In response, the

Commission stated that "numerous employees" had responsibility for overseeing PFG's financial status and regulatory compliance, with the department headed by Gary Barnet since August 2011. Prior to that time, a group headed by Ananda Radhakrishnan had that responsibility. The Commission also notes that in its response to Interrogatory No. 9, the Commission identified numerous employees who participated in the investigation of PFG and Wasendorf after the problem came to light.

In Interrogatory No. 7, the Bank asks the CFTC to identify each employee involved in the oversight or approval of any NFA audit or investigation of PFG. At the time of hearing, CFTC's counsel advised the Court that the Commission does not routinely review NFA audits, although it may review an audit for a particular investigation. In its response to Interrogatory No. 7, the Commission objected generally and then referred the Bank to its response to Interrogatory No. 6.

The Court concludes that the response to Interrogatory No. 7 is sufficient. However, if the Commission knows of any employees who were responsible for the oversight of PFG, other than the department heads, then it must provide the identity of those employees in response to Interrogatory No. 6.

### H. *Interrogatory No. 8*

Finally, the Bank asks the Commission to set forth a computation of each category of damages, "including a detailed account of any items of special damages, and identify all documents on which each computation is based." In response, the Commission stated that it will be seeking "civil monetary penalties in the amounts of not more than the higher of $140,000 for each violation of the Act, or triple the monetary gain to Defendant, for each violation of the Act, whichever is greater." In addition, the Commission intends to seek restitution, disgorgement, costs, and fees. At the time of hearing, counsel for the Commission stated that the claim would be in the "tens of millions of dollars."

The Court concludes that the Commission is required to supplement its response by stating with specificity the amounts claimed, and the manner in which the amounts were determined. If necessary, the Commission can further supplement its answer as the discovery proceeds.

## *VI. ORDER*

For the reasons set forth above, it is hereby **ORDERED** that the Motion to Compel (docket number 36) filed by U.S. Bank is **GRANTED in part** and **DENIED in part** as set forth above.

DATED this 3rd day of June, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA